IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


**CHRISTOPHER CODY LITTLETON**
**on behalf of himself and all others similarly situated**                                    **PLAINTIFF**

**v.**                                    **Case No. 5:14-CV-05007**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY**                                    **DEFENDANT**


## MEMORANDUM OPINION AND ORDER

On November 12, 2014, the parties appeared before the Court for a hearing on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment (Doc. 26), and Plaintiff Christopher Cody Littleton's Motion for Partial Summary Judgment (Doc. 32) and Motion to Certify Class (Doc. 45). The Court entertained oral argument and **DENIED** all three Motions from the bench.

The following Order sets forth the Court's reasoning in support of its rulings, beginning with the parties' cross-motions for summary judgment (Docs. 26, 32), followed by Plaintiff's request for class certification (Doc. 45), and concluding with a discussion regarding the basis for the Court's continuing jurisdiction over Plaintiff's individual claims. To the extent this Order conflicts with statements or rulings issued from the bench, this Order will control.

### I. BACKGROUND

This class action Complaint was first filed in the Circuit Court of Washington County, Arkansas, on December 10, 2013. According to the Complaint, Plaintiff Littleton was injured in a car accident and relied on State Farm, his automobile insurer, to reimburse his

medical care providers for medical costs incurred, up to the $5,000 med-pay coverage limit included in Littleton's policy ("the Policy"). Littleton alleges that State Farm failed to pay the total billed amounts, and as a result, Littleton still owes money to his medical care providers even though he did not exhaust his Policy's coverage limit. Littleton claims that State Farm paid reduced rates by improperly tapping into so-called "PPO network reductions," which, in Littleton's view, were negotiated by doctors and third-party "repricers" on behalf of health insurance providers—not on behalf of auto insurance providers like State Farm.

Littleton now argues that because State Farm was not entitled to in-network reductions, he and other similarly-situated insureds of State Farm remain personally liable to their medical providers for the difference between the bills they actually incurred and the reduced amounts State Farm paid, even though their insurance coverage limits were not exhausted. He alleges that in paying reduced rates for medical services, State Farm breached the terms of the Policy. Littleton also demands declaratory and injunctive relief regarding State Farm's practice of improperly tapping into in-network reductions.

In response, State Farm maintains that it is legally entitled to access in-network rates in the same manner as health insurance providers. Further, State Farm believes this practice actually *benefits* its insureds by lowering their total medical bills and leaving them with more med-pay dollars available for future medical care. State Farm disputes that Littleton or any other insured has suffered an injury-in-fact as a result of State Farm's practice of accessing in-network reduced rates; indeed, counsel for both parties have highlighted in their briefing and in response to the Court's questioning during the November 14th hearing that a material dispute of fact currently exists as to whether Littleton owed

money to either of his two medical care providers—Washington Regional Medical Center ("WRMC") and Blair Masters, a chiropractor—at the time the instant lawsuit was filed.

Littleton admits he signed agreements authorizing WRMC and Masters to collect medical payments on his behalf directly from State Farm. After State Farm received Littleton's bills, they forwarded them to a "repricing" company known as Mitchell, International, which in turn reviewed the bills and recommended that State Farm pay discounted in-network PPO rates for the medical services provided. The basis for State Farm's claim to these discounted rates stems from two contracts: first, a contract between WRMC and USA Managed Care Organization ("USA MCO"); and second, a contract between Masters and Integrated Health Plan, Inc. ("IHP"). State Farm did not enter into a contract directly with WRMC or Masters and was not a signatory either to the WRMC/USA MCO contract or the Masters/IHP contract. Instead, State Farm contracted with a third party called Cofinity, Inc. ("Cofinity"), which in turn entered into agreements with USA MCO and IHP on behalf of State Farm.

It appears that at some point, USA MCO sent letters to its health care provider partners informing them that State Farm would begin accessing the USA MCO reduced-rate network ordinarily accessed by health insurance providers. According to the sample letter provided by State Farm, USA MCO informed its health care providers that they were to accept State Farm's "network discount fee [as] payment in full for services rendered." (Doc. 26-13). Similarly, IHP sent letters to its health care providers under contract, informing them that State Farm would be accessing in-network rates. The IHP letter stated, "[p]lease let your billing staff, or outside billing service know of this relationship." (Doc. 26-12).

Based on these letters, as well as State Farm's direct contract with Cofinity, Inc., it is State Farm's position that it was entitled to access the reduced-rate network and pay reduced rates for medical services billed to its insureds, including WRMC and Masters. State Farm also maintains that WRMC and Masters accepted these discounted rates, cashed State Farm's checks, and released all medical liens related to Littleton's care.

Littleton counters that Masters does not agree now, nor did he agree at the time the Complaint was filed, that Littleton's medical bills were paid in full by State Farm. An employee of Masters named Carmen Ivy submitted conflicting affidavits on two different occasions during the course of this lawsuit. (Docs. 26-4, 34-2). On April 14, 2014, after the lawsuit was filed, she indicated "[t]he amount paid [by State Farm] constitutes payment in full." (Doc. 26-4). However, as of May 20, 2014, she reversed her position and stated in a second affidavit that as of February 26, 2013, prior to the filing of the lawsuit, there was, in fact, a balance due on the account of $202.50, and Masters' office "never agreed to take reductions from any med pay carriers including State Farm." (Doc. 34-2).

As for Littleton's debt to WRMC, State Farm submits the affidavit of WRMC's manager of collections, Susan Spaeth, in which she affirms on behalf of WRMC that the medical lien pertaining to Littleton was released on October 29, 2012, before the Complaint was filed. Further, Ms. Spaeth agrees in her affidavit that WRMC accepted the reduced rate on medical bills paid by State Farm, and that Littleton currently owes nothing on his bill to WRMC. (Doc. 26-3).

The Court is now faced with the task of ruling on cross-motions for summary judgment. State Farm's Motion asserts the following three arguments: (1) the case should be dismissed because Littleton has suffered no injury-in-fact and therefore lacks standing

to pursue this action because his medical providers accepted State Farm's reduced rates as payment in full; (2) even if it were determined that Littleton owed money to one of his medical providers, Littleton is not the real party in interest because he "assigned away any and all rights to payment of med-pay benefits under the Policy to his medical providers" (Doc. 26, p. 2); and (3) State Farm's payment of benefits comported with its own Policy and with Arkansas law, so Littleton's medical providers are contractually obligated to accept reduced rates as payment in full.

Littleton's Motion for Partial Summary Judgment argues that it was illegal as a matter of law for State Farm to tap into discounted in-network rates because: (1) State Farm did not enter into a contract with Littleton's medical providers for discounted rates, so there was no "agreement" as to these rates; (2) State Farm failed to provide Littleton with a subscriber identification card as required by Ark. Code Ann. § 23-63-113(c), which is a prerequisite for accessing in-network rates; (3) State Farm failed to provide WRMC and Masters with "annual notice" of access to discounted rates as required of health insurance providers by Ark. Code Ann. § 23-63-113(b)(2); (4) State Farm failed to obtain specific authorization to access reduced rates as required by Ark. Code Ann. § 23-63-113(b)(1); (5) State Farm failed to provide any consideration to the medical providers in exchange for the benefit of accessing the reduced-rate network; and (6) State Farm failed to remit timely "full" payment of Littleton's medical bills within 30 days in compliance with Ark. Code Ann. § 23-89-208.

In addition to the cross-motions for summary judgment, the Court must also consider whether to certify a class of individuals defined as follows:

> Residents of the State of Arkansas who, during the Class Period of January 1, 2008, through the date of resolution of this action;
>
> (a) have, had, or were covered under a contract of automobile insurance (the "Policy") with State Farm that includes or included "med pay" coverage;
>
> (b) submitted a claim to State Farm for payment of medical bills under the Policy's med-pay coverage;
>
> (c) had State Farm pay a lesser amount on a billed item than what was submitted based on a PPO Discount Rate applied under reason code 340, 352, 509, 513, 518, 550, 578, 614, 652, 705, 707, 711, 713, 715, 717, 719, 723, and/or 731; and
>
> (d) were paid and/or their medical providers were paid by State Farm a total, combined amount less than the Policy's med-pay policy limit.

(Doc. 46, p. 21).

As the issues to be considered in the context of the cross-motions for summary judgment will impact class certification, the Court will begin its analysis by determining whether any of the claims at issue may be disposed of as a matter of law and then move on to class certification concerns.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docs. 26, 32)

### A. Legal Standard

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The same standard applies where, as here, the parties file cross-motions for summary judgment. When there exists no genuine issue as to any material fact, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be

withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## B. Discussion

### 1. State Farm's Motion for Summary Judgment (Doc. 26)

State Farm contends there is no genuine dispute of material fact that both of Littleton's medical providers accepted State Farm's reduced rates as payment in full. The Court is not persuaded by this argument. Although the evidence is uncontroverted that WRMC accepted State Farm's reduced-rate payment on Littleton's behalf as payment in full, a genuine, material dispute of fact exists as to whether Masters refused to accept these reduced rates and now demands payment from Littleton. The affidavits submitted by Masters' office assistant, Ivy, confirm this dispute of fact, making summary judgment in State Farm's favor inappropriate.

State Farm argues in the alternative that it should prevail on the merits because Littleton "assigned" the payment of benefits to Masters, and Littleton therefore no longer maintains an injury-in-fact. Such an argument, though seemingly persuasive, must be

disregarded. Littleton did sign a document permitting Masters to bill State Farm directly for costs associated with medical care; however, this designation of procedure for collections practices does not equate to a contractual assignment of rights under the Policy, nor does such an assignment prohibit the medical provider from collecting residual balances from its patient. Littleton would still remain personally liable for any medical debt claimed by his medical providers that State Farm refused or otherwise failed to pay.

State Farm's final argument is that since its payment of benefits comported with its own Policy and with Arkansas law, Littleton's medical providers were contractually obligated to accept reduced rates as payment in full. The Court finds that there is still a material dispute of fact as to whether State Farm's payment of reduced rates can be considered "reasonable" under the terms of State Farm's own Policy. To be "reasonable," the rates must be agreed-to—either explicitly or constructively—by medical care providers. In Littleton's case, although it appears WRMC agreed to State Farm's payment policy and found it reasonable, there is a dispute of fact as to Masters' agreement.

For all of these reasons, State Farm's Motion for Summary Judgment (Doc. 26) is **DENIED**.

### 2. Littleton's Motion for Partial Summary Judgment (Doc. 32)

Littleton's Motion for Partial Summary Judgment is the inverse of State Farm's. Littleton asks the Court to rule as a matter of law that State Farm's payment of reduced network rates is illegal and violates the express terms of the Policy. State Farm admits it is not a party to any direct contracts with medical care providers, nor does it have direct contracts with third parties—such as IHP or USA MCO—who are, in fact, in privity of

contract with medical care providers. Nonetheless, the Policy also defines the payment of "reasonable expenses" as "[t]he fees agreed to by both the *insured's* healthcare provider and *us* . . ." (Doc. 26-2, p. 17). Consequently, even in the absence of a direct contract between State Farm and medical care providers, State Farm's payment of reduced rates could be deemed reasonable if some other means of agreement could be demonstrated. In this case, it is at least arguable that WRMC and State Farm came to a constructive agreement to accept reduced rates, as evidenced by WRMC's actual acceptance of payment from State Farm, followed by WRMC's release of Littleton's medical lien and its affirmation that no further debt was owed. WRMC's example is evidence that State Farm's policy may be "reasonable" by the Policy's terms. The Court, therefore, is not able to state as a matter of law that State Farm's practice of paying reduced rates necessarily breaches the terms of the Policy.

Littleton's next argument is that in order to take advantage of in-network rates normally accessed by health insurers, State Farm would have been required to comply with Ark. Code Ann. § 23-63-113(c) and provide Littleton and other similarly-situated insureds with "subscriber identification cards." The Court observes that this contention, even if true, does not dispose of any issues of damages or liability in the case at bar. Further, it is not at all clear to the Court that State Farm was required to comply with this statutory provision of Arkansas law in the first place, and neither party cites to case law to support its particular interpretation of the statute. The Court is not convinced that Littleton would be entitled to bring a private right of action to enforce compliance with the statute, even if State Farm were obligated to comply. As this issue of statutory interpretation does not

appear to be a proper basis for granting summary judgment as to any of Littleton's claims, the Court will not rule on it at this time.

The same reasoning articulated above applies to Littleton's request that the Court rule as a matter of law that State Farm failed to comply with Ark. Code Ann. § 23-63-113(b)(1)-(2), which requires health insurers to provide medical care providers with "annual notice" of access to discounted rates and specific authorization to access these rates. Deciding whether either of these statutes affects State Farm, an auto insurance carrier, does not impact any ultimate issue of liability or damages in the case. In addition, whether State Farm was required to provide such notice or authorization to health care providers pertains to WRMC and Masters' rights and interests—not Littleton's rights and interests.

Turning to Littleton's argument that State Farm failed to provide any consideration to his medical providers in exchange for the benefit of accessing the reduced-rate network, this argument again appears to have been made in furtherance of the medical providers' rights and interests, rather than Littleton's. The Court will, therefore, not rule on this issue on summary judgment.

Finally, Littleton contends that State Farm failed to remit timely payment within 30 days, as required by Ark. Code Ann. § 23-89-208. The crux of this argument is Littleton's view that "timely payment" cannot be one that relies on in-network reduced rates. As discussed in detail above, there remains a genuine dispute of material fact as to whether Littleton's medical providers explicitly or constructively agreed to State Farm's payment of reduced rates. If there was agreement, then payment by State Farm was also timely according to the statute.

For all of these reasons, Littleton's Motion for Partial Summary Judgment (Doc. 32) is **DENIED**.

### III.  MOTION TO CERTIFY CLASS (Doc. 45)

#### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 23, certifying a class action requires a two-step analysis.  First, a class action may be maintained if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)-(4).  Second, a class action will be deemed appropriate if a court finds that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

A recognized prerequisite to the class certification inquiry involves a court's assessment as to the ascertainability of the class.  The requirement of ascertainability simply means that the description of a proposed class must be sufficiently definite "so that it is administratively feasible for the court to determine whether a particular individual is a member."  7A Charles Alan Wright et al., Federal Practice and Procedure § 1760 (3d ed. 2005).  "The requirement that a class be clearly defined is designed primarily to help the trial court manage the class.  It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of

the class are determinable at the outset of the litigation." *Bynum v. District of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003).

The district court retains "broad discretion in determining whether to certify a class, recognizing the essentially factual basis of the certification inquiry and . . . the district court's inherent power to manage and control pending litigation." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (internal quotations and citations omitted).

### B. Discussion

#### 1. Ascertainability

The Court finds that the composition of the class is not readily ascertainable through an objective search of State Farm's records. It is impossible to assume that because an insured (1) received a bill for medical services and (2) State Farm paid a discounted amount on the bill after applying a reduced rate, the insured necessarily suffered an injury. In Littleton's case, the WRMC bill is illustrative of this point: WRMC billed State Farm for Littleton's medical care, State Farm issued payment at a discounted rate, and WRMC affirmed that Littleton owes nothing on the bill.

Viewing the evidence regarding Masters' bill in the light most favorable to Littleton—as the Court must do at this stage of the litigation in light of the genuine, material disputes of fact at issue—reveals that Masters may have left "on the books" the difference between what he billed State Farm and what State Farm actually paid. Masters made no attempt to collect this amount from Littleton prior to the filing of the Complaint, and at some point during the litigation, Masters' assistant affirmed that the full amount was considered

paid. Masters' position on the issue changed after this, and now he maintains that Littleton owes a debt. Determining whether each of the potentially thousands of insureds in the putative class has an injury-in-fact will necessitate individualized inquiry and make the ascertainability of the class excessively burdensome and time-consuming.

Although Littleton attempts to argue that "[t]he injury is the violation of the contract, not the deprivation of a monetary benefit that may have accompanied the contract," (Doc. 54, p. 26), the Court finds this proposition unavailing, particularly as it impacts issues of standing. The case cited by Littleton in support of his position is inapposite, as it involves the peculiar standing of a trade union to negotiate for contract benefits on behalf of union members. *See, e.g., United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am, Inc.*, 710 F.3d 470, 474-75 (2d Cir. 2013). According to this case, a union has standing to bring a breach of contract action even if the union doesn't specifically "benefit" from the contract or suffer damages flowing from the contract's breach. *Id.* The peculiar status of unions is not analogous to the relationships at issue in the case at bar. Here, Littleton argues that an individual insured should have standing to assert a claim for a technical breach-of-contract violation even if the insured has not suffered actual damage. The Court finds this argument directly contrary to basic principles of contract law. *Rabalaias v. Barnett*, 284 Ark. 527, 528-29 (1985) (elements of breach of contract claim under Arkansas law are (1) the existence of a valid and enforceable contract, (2) an obligation on the part of the defendant, (3) a breach of that obligation, and (4) damages resulting from the breach); *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 258 (1999) ("In general, damages recoverable for breach of

contract are those damages which would place the injured party in the same position as if the contract had not been breached.").

As for Littleton's claim for declaratory judgment/injunctive relief, the hotly-contested disputes involving Masters, State Farm, and Littleton are emblematic of the fact-intensive inquiry that will be needed in order to ascertain whether State Farm's practice of paying reduced rates harms or benefits insureds. There is a related dispute as to whether the practice either has been constructively agreed-to by medical care providers and is thus "reasonable" under the Policy or has not been agreed-to.

For these reasons, the lack of ascertainability of the class weighs against certification.

### 2. Numerosity

Factual disputes as to standing and ascertainability of the class call into question the class's numerosity. However, even if the Court assumes the class is sufficiently numerous, this factor is not dispositive of the certification question.

### 3. Commonality

This requirement asks whether there are questions of fact and law that are common to all members of the proposed class. As previously discussed, it appears State Farm routinely engages in the practice of accessing reduced-rate networks indirectly in order to pay claims for medical care. There yet remain fact-intensive, individualized questions as to whether each putative class members was damaged as a result of this practice. The medical providers of each insured would potentially need to be involved in the lawsuit in some capacity to affirm whether or not reduced rates were, in fact, accepted with no further

amounts due and owing, or accepted with amounts still considered "owed" by each insured.

Despite State Farm's use of a uniform policy as to its insureds' reimbursement of med-pay benefits at reduced rates, the questions of fact that remain with regard to standing, injury-in-fact, and whether the putative class's medical care providers agreed to accept reduced rates are all key issues of commonality that weigh against certification.

### 4. Typicality

This requirement asks whether the named plaintiff's claim is "typical" of those of the rest of the class members. As discussed previously, although the putative class will share with Littleton the fact that their claims were paid at reduced rates by State Farm, Littleton's standing to assert a claim for breach of contract or for declaratory/injunctive relief is questionable, although sufficient at this stage so as to survive summary judgment. It is unclear whether any members of the putative class will be found to owe debts to their medical providers, or whether, like Littleton, these issues will be contested.

The Court therefore finds that the typicality of Littleton's claim weighs against certification.

### 5. Adequacy of Representative Plaintiff and Plaintiff's Counsel

Even assuming that Littleton and his counsel will fairly and adequately protect the interests of the class, this factor is insufficient to constitute a basis for certifying the class, particularly in light of the problems of ascertainability, commonality, and typicality.

### 6. Predominance

As explained above, the Court finds that individual issues predominate over class issues. Individualized inquiry will be needed to determine whether each class member either received a benefit by virtue of State Farm's practice of paying reduced, in-network rates, or incurred a detriment and now owes money to one or more medical providers. This factor weighs against certification.

### 7. Superiority

The last factor to consider is whether a class action is a superior means of resolving this dispute than other litigation methods. According to the Supreme Court, the "principal purpose" of a class action is to advance "the efficiency and economy of litigation." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974). In this regard, Rule 23 class actions can be viewed as having been created as a management tool to make litigation easier, not more complicated. If the Court were to certify the proposed class of thousands of insureds, the complexities that would result from class certification would outweigh any benefits derived from class treatment. Certifying a class would invite individualized inquiry into each insured's standing to sue and would involve the active participation of multiple third-party health care providers at all phases of litigation. The fundamental question of whether a class member has suffered a benefit or a detriment as a result of the policy at issue would be litigated on an individualized basis. Therefore, the superiority of individual litigation weighs against certification, at least as it concerns a putative class of insureds. A challenge made to State Farm's policy by medical providers who received reduced

payments could potentially justify a class action; however, that particular lawsuit is not before this Court.

After weighing all seven relevant factors, the Court in its discretion finds that Plaintiff's Motion to Certify Class (Doc. 45) is **DENIED**.

## IV. JURISDICTION OVER LITTLETON'S INDIVIDUAL CLAIMS

The basis for jurisdiction in this case was made pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), which provides that "[t]he district courts shall have the original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . ." § 1332(d)(2).

The Eighth Circuit has definitively ruled that CAFA jurisdiction "continue[s] despite the district court's denial of Plaintiffs' motion for class certification." *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 n.2 (8th Cir. 2011); *see also United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1089 (9th Cir. 2010); *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806-07 (7th Cir. 2010); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009). The Court will therefore enter an amended scheduling order setting a new trial date and related deadlines pertaining to Littleton's individual claims.

## V. CONCLUSION

**IT IS ORDERED** that Defendant State Farm's Motion for Summary Judgment (Doc. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Littleton's Motion for Partial Summary Judgment (Doc. 32) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Littleton's Motion to Certify Class (Doc. 45) is **DENIED**.

An amended scheduling order will issue shortly setting forth a new trial date and related deadlines pertaining to Plaintiff's individual claims.

**IT IS SO ORDERED** this _8_th day of January, 2015.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE